IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
The Honorable Michael E. Romero

In re:

USA Cricket

Debtor.

Case No. 25-16381 MER

Chapter 11

## ORDER DENYING MOTION TO AMEND DEBTOR'S PETITION AND APPOINT A CHAPTER 11 TRUSTEE WITHOUT PREJUDICE

THIS MATTER comes before the Court on the Motion for an Order to: (1) Amend Debtor's Voluntary Petition Pursuant to Federal Rule of Bankruptcy Procedure 1009(a) and (2) Appoint a Chapter 11 Trustee Pursuant to 11 U.S.C. § 1104(a) With Powers Under § 1106 ("**Motion**") filed by American Cricket Enterprises, Inc. ("**ACE**"), the United States Trustee's objection and other responses thereto, ACE's reply, and the Motion by Majority of Directors, Filed in Personal Capacities, Requesting Continuation of Subchapter V and Clarification of Board Authority ("**Majority Motion**") filed by Venu Pisike, David Haubert, Anj Balusu, Pintoo Shah, and Srini Salver.[1]  There were no responses to the Majority Motion.

## BACKGROUND

This Motion comes before the Court under unique circumstances and requests equally unusual relief.  The Debtor commenced this case on October 1, 2025, and elected to proceed as a small business debtor under Subchapter V of Chapter 11.  ACE filed the instant Motion on November 11, 2025.  In the Motion, ACE asserts, among other things, that the Debtor's current governance has demonstrated gross mismanagement and an inability to act in the best interests of the estate.  Specifically, ACE asserts the Debtor's CEO furloughed himself and that the Board of Directors ("**BOD**") is deadlocked and incapable of making the decisions necessary for the Debtor to function as a going concern.  As such, ACE asserts that it is in the best interests of the estate and creditors that the Debtor's Subchapter V election be revoked, and a Chapter 11 trustee be appointed.

Several parties in interest filed responses to ACE's Motion, including the International Cricket Council ("**ICC**"), United Cricketers Association, and four of the Debtor's nine BOD members.  These parties agree with ACE that the Debtor's current

---

[1] ECF Nos. 90, 96, 108, 109, 112, 117. & 122.

governance is dysfunctional and incapable of proposing a confirmable plan of reorganization, as required of by Subchapter V. None of these parties wishes to see the Debtor's case dismissed or converted to a Chapter 7; therefore, they agree that the best course of action would be for the Debtor's Subchapter V designation to be revoked so a Chapter 11 Trustee can be appointed. The UST, however, objects to the Motion, arguing the Court does not have the authority to revoke the Debtor's designation because the decision to proceed in Subchapter V belongs to the Debtor alone. Further complicating the matter is the Majority Motion, which was allegedly filed by five of the nine BOD members.[2] The Majority Motion asserts these five members are a clear majority of the Debtor's board, and are capable of making decisions necessary for the Debtor's bankruptcy to be successful, including that the purported majority wishes to remain in Subchapter V and declines to voluntarily remove the Debtor's designation and appoint a Chapter 11 trustee.

Despite the allegations in the Majority Motion, the Court still has concerns regarding the Debtor's governance and its ability to reorganize successfully. Indeed, despite the assertion that the BOD is functional, the Debtor failed to file the required status report before the Initial Subchapter V Status Conference. After the Court issued an order to show cause as to why the Debtor did not file the status report, Debtor's counsel filed a response advising the Court that a report had not been filed due to issues regarding the membership of the BOD and the lack of a voting majority.[3] These concerns were further exacerbated at a status conference held on December 3, 2025. During the conference, both Debtor's counsel and the Subchapter V Trustee advised the Court that they could not say for certain whether the assertions in the Majority Motion are true. As such, ACE again asserted the only way for the Debtor to reorganize successfully is to revoke its Subchapter V election and for a Chapter 11 trustee to be appointed.

## ANALYSIS

Section 1104 of the Bankruptcy Code permits the Court, on request of a party in interest or the UST, to appoint a trustee in a Chapter 11 case.[4] Section 1106 confers on a trustee appointed pursuant to § 1104 a variety of powers, including, among other things, the authority to file a plan of reorganization.[5] However, neither §§ 1104 nor 1106 is applicable in Subchapter V cases.[6] As such, the Court cannot appoint a Chapter 11 trustee unless and until the Debtor's Subchapter V election is revoked.

---

[2] ECF No. 122.

[3] ECF Nos. 100 & 107.

[4] 11 U.S.C. § 1104(a). Any use of the term "Section" or "§" means Title 11 of the United States Code.

[5] 11 U.S.C. § 1106(a)(5).

[6] 11 U.S.C. § 1181(a)

Pursuant to § 103(i), Subchapter V of Chapter 11 only applies in cases in which the debtor has elected to proceed under it. A debtor elects to proceed in Subchapter V by making the election on its bankruptcy petition. Once a debtor has elected to proceed in Subchapter V, "[t]he case must proceed in accordance with the debtor's statement, unless and until the court issues an order finding that the statement is incorrect."[7] Because a debtor makes its Subchapter V election on its petition, no provision in the Bankruptcy Code provides a mechanism for conversion from a regular Chapter 11 to a Subchapter V and vice versa.[8] Instead, courts have held that a debtor who initially decided to proceed in a regular Chapter 11 and later decides to proceed under Subchapter V may do so by amending its petition in accordance with Rule 1009.[9] The same is true in cases where a debtor initially elects to proceed under Subchapter V but is later determined to be ineligible.[10] However, few courts have addressed the relief ACE requests here, that is, whether the Court can use Rule 1009 to compel the Debtor, who is otherwise statutorily eligible to proceed under Subchapter V, to amend its bankruptcy petition to remove the designation so that the Debtor proceeds in a regular Chapter 11 case and a Chapter 11 trustee may be appointed.

**A.     The Caselaw Permits Revocation of a Subchapter V Designation**

At least one court has held that an otherwise eligible Subchapter V debtor's designation may be revoked under certain circumstances. In the case, *In re National Small Business Alliance, Inc.* ("**NSBA**"), the Bankruptcy Court for the District of Columbia revoked the debtor's Subchapter V designation after the debtor failed to propose a confirmable plan within the 90-day deadline prescribed by § 1189(b) and subsequently proposed five unconfirmable plans.[11] In support of its decision, the court in *NSBA* stated that its ability to revoke the debtor's Subchapter V election was consistent with not only the Bankruptcy Code, but also Congress's goal of Subchapter V providing a streamlined reorganization process.[12] The court further noted that § 105(a) empowered it to revoke the debtor's election when doing so was necessary to carry out other provisions and goals of the Bankruptcy Code, and that allowing for revocation to

---

[7] Fed. R. Bankr. P. 1020(a).

[8] *In re National Small Business Alliance, Inc.*, 642 B.R. 345, 348 (Bankr. D.D.C. 2022) (*citing In re Peak Serum, Inc.*, 623 B.R. 609, 616 (Bankr. D. Colo. 2020); *Seven Stars on the Hudson Corp.*, 618 B.R. 333, 342 at n. 58 (Bankr. S.D. Fla. 2020)).

[9] Any use of the term "Rule" hereafter means the Federal Rules of Bankruptcy Procedure.

[10] *In re National Small Business Alliance, Inc.*, 642 B.R. at 348 ("The Court cannot order that the Debtor convert to 'standard' chapter 11 but instead must order that the Debtor's petition be amended to revoke the election to proceed under Subchapter V.").

[11] *Id.* at 349-50.

[12] *Id.* at 348.

proceed in a regular Chapter 11 was consistent with the right conferred on a debtor to convert a case to another chapter.[13]

Other courts have declined to issue a definite opinion one way or the other, but generally agree that there are a few, narrow circumstances that may warrant the revocation of an otherwise eligible Subchapter V debtor's election.  In the case *In re ComedyMX, LLC* ("**ComedyMX**"), one of the debtor's creditors, Beyond Blond Productions ("**Beyond Blond**") filed a motion to redesignate the case to a regular Chapter 11 under Rule 1009(a) and appoint a Chapter 11 trustee after the debtor's principal and only officer was found to have sent a series of unscrupulous emails that called into question his ability to serve in a fiduciary capacity to the debtor's bankruptcy estate.[14]  Alternatively, Beyond Blond requested the court remove the debtor as a debtor in possession pursuant to § 1185 and authorize the Subchapter V trustee to operate the debtor's business pursuant to § 1183(b)(5).  The court in ComedyMX began its analysis by noting that neither the Bankruptcy Code nor the Rules provides a standard for assessing a motion to amend a bankruptcy petition, nor does any provision of Subchapter V discuss the revocation of an election to proceed thereunder by the court or any other party.[15]  The court further stated that, because the Bankruptcy Code contains no provision that squarely addresses de-designation, an analysis of the issue cannot stop at Rule 1009(a).[16]  Instead, the court found that § 103(i) provides a serious counterargument to compelling a debtor to amend its petition to remove its Subchapter V designation.[17]  That is, § 103(i) provides that the decision to proceed under Subchapter V rests within the exclusive discretion of the debtor.[18]  Rule 1020 further supports this argument, as Rule 1020 can be read to imply that the debtor's determination to proceed under Subchapter V shall be controlling unless and until the court determines the debtor is statutorily ineligible.[19]  The court also observed that using Rule 1009 to compel an unwilling debtor to amend its petition to remove its Subchapter V election may create opportunities for creditors to circumvent the conversion standards set forth in other chapters.[20]

Ultimately, the court in ComedyMX declined to resolve the issue of de-designation.  Instead, the court found that the debtor should not be punished or lose the

---

[13] *Id.* at 349.

[14] *In re ComedyMX, LLC*, 647 B.R. 457, 459 (Bankr. D. Del. 2022).

[15] *Id.* at 463 (*citing In re National Small Business Alliance*, 642 B.R. at 348).

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.* at 464.

[20] *Id.*

4

benefits of Subchapter V on account of the shortcomings of its principal.[21] As such, the court decided to grant Beyond Blonde's alternative relief, remove the debtor as the debtor-in-possession, and expand the powers of the Subchapter V trustee.[22] The court further noted that although it would not decide the question of de-designation, any authority that may exist to override a debtor's judgment to proceed under Subchapter V should be exercised only as a, "last resort, where no other mechanism is available to achieve the objectives of chapter 11."[23]

Given that the few courts that have addressed this issue have determined there are narrow circumstances in which an otherwise eligible Subchapter V debtor's election may be revoked, the Court now turns to the question of whether the Debtor's case fits such circumstances. The analysis turns on whether the Debtor's case and prospects for reorganization under Subchapter V are so hopeless and counter to the goals of Subchapter V that the only viable option for the debtor to reorganize is to de-designate it and appoint a Chapter 11 trustee.

**B. A Successful Subchapter V Reorganization Is Not Yet Impossible**

The question of whether it is entirely implausible the Debtor can successfully reorganize under Subchapter V is close. On one hand, parties such as the ACE, ICC, and even a handful of the Debtor's directors assert that the Debtor's historical and current dysfunctionality prevent any possible success of a Subchapter V reorganization. On the other hand, there is a purported majority of the Debtor's directors who assert that the Debtor is more than capable of making the necessary decisions to propose a successful plan of reorganization. The Debtor has thus far also complied with most of the deadlines and requirements imposed by the Bankruptcy Code. Perhaps most importantly, the Debtor has not yet demonstrated that it is incapable of proposing a viable plan because the deadline to do so has not yet passed.

The standards for revoking a debtor's Subchapter V election are high. The court in *NSBA* only revoked the debtor's designation after the debtor missed the 90-day plan deadline and filed five unconfirmable plans.[24] Similarly, one of the reasons the court in *ComedyMX* declined to revoke the debtor's election was that the case was still in its infancy and the debtor had not yet had an opportunity to file a plan.[25] Indeed, the court in *ComedyMX* stated that

> The debtors either will or will not be able to propose a plan of reorganization that is capable of being confirmed. But under the circumstances of this case, the

---

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *In re National Small Business Alliance, Inc.*, 642 B.R. at 349.

[25] *In re ComedyMX*, 647 B.R. 457 at 464.

5

Court does not believe, if it has the power to de-designate at all, that it would be appropriate to exercise that authority before such efforts are exhausted.[26]

Here, the Court cannot find that all efforts to propose a successful plan of reorganization have been exhausted because the deadline to file a plan has not yet passed. Therefore, the Debtor has not yet demonstrated that it is truly incapable of successfully reorganizing under Subchapter V. As such, the Court cannot, at this time, find that cause exists to revoke the Debtor's designation. Because the Court finds it cannot de-designate the Debtor at this time, the Court also cannot appoint a Chapter 11 trustee.[27]

While the Court does not believe cause exists at this time to revoke the Debtor's designation, the Court cautions the Debtor that since it elected to proceed in Subchapter V, it is obligated to meet all the requirements and deadlines thereunder. This includes filing a viable plan of reorganization by the 90-day deadline, which is December 30, 2025.[28] While § 1189(b) permits the Court to extend the plan deadline, the Court is not inclined to do so here, given the multitude of concerns surrounding the Debtor's ability to reorganize under Subchapter V. The Court also will not resolve the Debtor's internal governance disputes for it. Simply put, the responsibility for making the decisions necessary to submit a confirmable plan of reorganization by the December 30, 2025 deadline rests solely with the Debtor. If the Debtor fails to comply with the obligations of Subchapter V, including filing a timely plan, the Court will likely grant any future motion to revoke the Debtor's designation and appoint a Chapter 11 trustee.

**C.    The Court Will Not Expand the Subchapter V Trustee's Powers**

The Court acknowledges the UST's argument that Subchapter V provides means of removing a debtor as a debtor-in-possession and expanding the powers of the Subchapter V Trustee without the need for revoking the Debtor's designation.[29] Indeed, § 1185 permits the Court, on request of a party in interest, to dispossess the Debtor for cause, including, among other things, incompetence or gross mismanagement.[30] Section 1183 further permits the Court to expand the powers of the Subchapter V Trustee, including authorizing the Trustee to operate the Debtor's business.[31] However,

---

[26] *Id.*

[27] 11 U.S.C. §§ 1181(a) & 1104.

[28] 11 U.S.C. § 1189(b); *see In re Signia, Ltd.*, Case No. 23-14384-TBM, 2024 WL 331967, at *1 (Bankr. D. Colo. 2024) ("However, Subchapter V cases are *supposed to proceed quickly*. Section 1189(b) mandates the timing of a Subchapter V reorganization plan.") (emphasis added).

[29] ECF No. 109, ¶ 22.

[30] 11 U.S.C. § 1185(a).

[31] 11 U.S.C. §§ 1183(b)(5) & (b)(7).

6

even if the Court dispossessed the Debtor and expanded the Trustee's powers, the Debtor would still retain the sole power to file a plan.[32]

Neither ACE nor any other party in interest has requested that the Debtor be dispossessed, and the Subchapter V Trustee's powers be expanded. Instead, ACE asserts that even if the Debtor were removed as the debtor-in-possession and the Trustee's powers were expanded, the Debtor would still be unable to file a viable plan due to the dysfunctionality of the Debtor's governance.[33] The Court agrees. If the Debtor fails to file a confirmable plan by the 90-day deadline, it will not matter if the Trustee's powers are expanded because the Debtor alone would retain the right to file a plan. The Subchapter V Trustee can still aid the Debtor by facilitating the development of a consensual plan without having his powers expanded.[34] Therefore, the Court does not believe removing the Debtor as the debtor-in-possession and expanding the Trustee's powers will resolve the issues at hand and thus declines to do so.

## CONCLUSION

For the reasons stated above, the Court

ORDERS, the UST's Objection is SUSTAINED. The Court

FURTHER ORDERS, ACE's Motion is DENIED without prejudice. The Court

FURTHER ORDERS, the Majority Motion is DENIED as moot. The Court

FURTHER ORDERS the Debtor shall file its Subchapter V plan of reorganization on or before **December 30, 2025.**

Dated: December 15, 2025.

BY THE COURT

Michael E. Romero, Judge
United States Bankruptcy Court

---

[32] *In re ComedyMX*, 647 B.R. at 465.

[33] ECF No. 90, ¶¶ 45-46.

[34] 11 U.S.C. § 1183(b)(7).